1  BENJAMIN B. WAGNER
   United States Attorney
2  JOHN K. VINCENT
   PHILLIP A. FERRARI
3  Assistant U.S. Attorneys
   501 I Street, Suite 10-100
4  Sacramento, California 95814
   Telephone: (916) 554-2700
5
6
7





FILED

MAR 3 0 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,      )  CASE NO.  2:12-cr-00123-KJM
                                   )
12                   Plaintiff,    )  **PLEA AGREEMENT**
                                   )
13  v.                             )  DATE: March 30, 2012
                                   )  TIME: 11:00 am
14  KINDE DURKEE,                  )  COURT: HON. KIMBERLY J. MUELLER
                                   )
15                   Defendant.    )
                                   )
16  _____)

17

18                            I.

19                       **INTRODUCTION**

20      **A.  Scope of Agreement**:  The Information in this case charges

21  the defendant with five (5) counts of mail fraud in violation of

22  Title 18, United States Code, Sections 2 and 1341.  This document

23  contains the complete plea agreement between the United States

24  Attorney's Office for the Eastern District of California, the

25  Northern District of California, the Central District of California,

26  the Southern District of California, the Eastern District of

27  Virginia, and the District of Columbia (the "government") and the

28  defendant regarding this case.  This plea agreement does not bind any

                             1

other federal, state, or local prosecuting, administrative, or regulatory authorities, including the United States Department of Justice Tax Division, the Federal Election Commission, or the Internal Revenue Service.

**B.   Court Not a Party:**  The Court is not a party to this plea agreement.   Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.   If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement.   The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A.   Guilty Plea:**  The defendant will plead guilty to the Information attached hereto as Exhibit B charging her with five counts of mail fraud in violation of Title 18, United States Code, Sections 2 and 1341.   The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

**B. Waiver of Indictment:**  The defendant also agrees that at the entry of plea proceeding, she will sign a written waiver of

///

2

1    prosecution by Indictment and consent to proceed by Information
2    rather than by Indictment.

3         **C. Waiver of Objection to Venue:**  The defendant waives any
4    objection to venue in pleading guilty to the mail fraud charge
5    contained in Count One of the Information.

6         **D.   Restitution:** The Mandatory Victim Restitution Act requires
7    the Court to order restitution to the victims of certain offenses,
8    including, in the case of an offense that involves as an element a
9    scheme or pattern of criminal activity, any person directly harmed by
10   the defendant's criminal conduct in the course of the scheme or
11   pattern. 18 U.S.C. § 3663A(a)(2).   The defendant agrees to pay full
12   restitution as ordered by the Court.   Payment should be by cashier's
13   or certified check made payable to the Clerk of the Court.

14        The defendant agrees to sign a Stipulation and Order to Turn
15   Over Asset for Restitution in *U.S. v. Real Property located at 1212*
16   *South Victory Boulevard, Burbank, California, Los Angeles County,*
17   *APN: 5625-014-016*, 2:11-CV-02390-GEB-DAD, turning over her right,
18   title, and interest in the real property and/or the net proceeds from
19   the sale of the real property, to the Clerk of the Court for the
20   Eastern District of California for restitution.   This stipulation
21   must be signed at least seven days prior to sentencing.

22        Defendant also agrees to release money she has in a 401(k)
23   account so that it can be used for restitution.   The defendant agrees
24   to liquidate the 401(k), and then turn the funds over to the Clerk of
25   the Court for the Eastern District of California for restitution.

26        Defendant further agrees that she will not seek to discharge any
27   restitution obligation or any part of such obligation in any
28   bankruptcy proceeding.

3

**E   Fine:**   The defendant agrees to pay a criminal fine as ordered by the Court.

**F.   Special Assessment:**   The defendant agrees to pay a special assessment of $500 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**G.   Asset Disclosure:** The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office"s "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea.   The defendant also agrees to have the Court enter an order to that effect.

**III.**

**THE GOVERNMENT'S OBLIGATIONS**

**A.   Dismissals:**   The defendant will plead guilty to all of the crimes charged against her in the Information.   The government will not be dismissing any count as part of this plea agreement.   If the defendant pleads guilty as set forth herein prior to Indictment, the government will not seek to bring money laundering charges against her.

**B.   Recommendations:**

**1.   Incarceration Range:**   The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for her offenses as determined by the United States

4

1  Probation Office.

2      **2.  Acceptance of Responsibility:**  If the United States

3  Probation Office determines that a three-level reduction in the

4  defendant's offense level for her full and clear demonstration of

5  acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1,

6  the government will not oppose such a reduction and will so move

7  under § 3E1.1(b), so long as the defendant pleads guilty, meets with

8  and assists the probation officer in the preparation of the pre-

9  sentence report, is truthful and candid with the probation officer,

10 and does not otherwise engage in conduct that constitutes obstruction

11 of justice within the meaning of U.S.S.G § 3C1.1, either in the

12 preparation of the pre-sentence report or during the sentencing

13 proceeding.

14                              **IV.**

15                    **ELEMENTS OF THE OFFENSE**

16     At a trial, the government would have to prove beyond a

17 reasonable doubt the following elements of the mail fraud offenses to

18 which the defendant is pleading guilty:

19     1.   The defendant knowingly devised, intended to devise, or

20 participated in a scheme or plan to defraud, or a scheme or plan for

21 obtaining money or property by means of false or fraudulent

22 pretenses, representations, or promises;

23     2.   The statements made or facts omitted as part of the scheme

24 were material; that is, they had a natural tendency to influence, or

25 were capable of influencing, the actions of another person;

26     3.   The defendant acted with the intent to defraud; that is,

27 the intent to deceive or cheat; and

28     4.   The defendant used, or caused to be used, the mails or a

                              5

private or commercial interstate carrier to carry out or attempt to carry out an essential part of the scheme.

## V.

### MAXIMUM SENTENCE

**A.  Maximum Penalty:**  The maximum sentence that the Court can impose is **20 years of incarceration, a fine of $250,0000, a three (3) year period of supervised release, and a special assessment of $100 for each count**.  By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is <u>not</u> restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty.  The defendant further agrees that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.  Violations of Supervised Release:** The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to **two (2) additional years imprisonment**.

## VI.

### SENTENCING DETERMINATION

**A.  Statutory Authority:**  The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as interpreted by <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007), <u>Gall v. United States</u>, 552 U.S. 38 (2007), <u>Rita v. United States</u>, 551 U.S.

6

338 (2007), and <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 543 U.S. 220 (2005), and must take them into account when determining a final sentence.   The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines.   The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.   The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.   Guidelines Calculation:**   The government and the defendant believe that there is no material dispute as to the following sentencing guidelines variables and therefore believe the following to be correct:

**1.   Base Offense Level:** 29 or 31, pursuant to §2B1.1(a)(1); (b)(1)(K); and (b)(2)(A) or (b)(2)(B), depending on the total loss to victims and the number of victims.   The parties believe that the scheme caused a loss to victims exceeding $7 million, but less than $20 million.   The parties do not agree as to a specific loss figure within this guideline range.   If the defendant acquires new information causing her to believe that the loss figure is below $7 million, the defense will be able to share that information with the United States, the Probation Officer, and the Court as it relates to the appropriate

7

guideline calculation.  The loss figure will be set by the Court at the time of sentencing based on input from the parties.

As for the number of victims, the parties agree that there were more than 10 victims, and that the number of victims may be 50 or more.  The Court will determine the number of victims at the time of sentencing based on input from the parties.

**2.   Victim-related Adjustments:** Not Applicable

**3.   Role in the Offense Adjustment:**  +2 more under §3B1.3 because the defendant abused a position of trust.  The government believes that there should be a 3-level increase under §3B1.1(b) because the criminal activity at Durkee and Associates was extensive, but the defendant does not agree.  The parties will argue their respective positions concerning the role in the offense adjustment.

**4.   Obstruction Adjustment:** Not Applicable

**5.   Adjusted Offense Level:** No stipulation

**6.   Acceptance of Responsibility:**  See paragraph III(B)(2) above

**7.   Criminal History:** No stipulation, but the parties believe that the defendant's criminal history category is I.

**8.   Departures:** Not Applicable

**9.   Sentencing Range:** No stipulation, but if the defendant's base offense level is 33 because the loss exceeds $7 million and there are at least 50 victims, and there is a 3-level increase under §3B1.1(b) for role in the offense, then the adjusted offense level will be 36.  If the defendant's criminal history category is I, then the sentencing range, assuming acceptance of responsibility, will be 135-168 months.

8

1           **10.   Departures or Other Enhancements or Reductions:** The
2 parties agree that they will not seek or argue in support of any
3 other specific offense characteristics, Chapter Three adjustments, or
4 cross-references other than as set forth above.   The defendant is,
5 however, free to recommend to the Court whatever sentence she
6 believes is appropriate under 18 U.S.C. § 3553(a).

**VII.**

**WAIVERS**

9    **A.   Waiver of Constitutional Rights:**   The defendant understands
10 that by pleading guilty she is waiving the following constitutional
11 rights: (a) to plead not guilty and to persist in that plea if
12 already made; (b) to be tried by a jury; (c) to be assisted at trial
13 by an attorney, who would be appointed if necessary; (d) to subpoena
14 witnesses to testify on her behalf; (e) to confront and cross-examine
15 witnesses against her; and (f) not to be compelled to incriminate
16 herself.

17    **B.   Waiver of Appeal and Collateral Attack:**   The defendant
18 understands that the law gives her a right to appeal her guilty plea,
19 conviction, and sentence.   She agrees as part of her plea, however,
20 to give up the right to appeal the guilty plea, conviction, and any
21 aspect of the sentence imposed in this case so long as her sentence
22 is no longer than the top of the Sentencing Guidelines range
23 determined by the Court consistent with the calculation set forth
24 above about the Sentencing Guidelines variables, that is, 168 months.
25 She specifically gives up her right to appeal any order of
26 restitution the Court may impose.

27    Regardless of the sentence she receives, the defendant also
28 gives up any right she may have to bring a post-appeal attack on her

9

guilty plea, conviction, or her sentence.  She specifically agrees

not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking her

guilty plea, conviction, or sentence.

Notwithstanding the agreement in paragraph III. A. above that

the government will not seek to bring money laundering charges

against her if the defendant pleads guilty as set forth herein prior

to Indictment, if the defendant ever attempts to vacate her plea,

dismiss the underlying charges, or reduce or set aside her sentence

on any of the counts to which she is pleading guilty, the government

shall have the right (1) to prosecute the defendant on any of the

counts to which she pleaded guilty; and (2) to file any new charges,

including those that would otherwise be barred by this plea

agreement, such as money laundering.  The decision to pursue any or

all of these options is solely in the discretion of the government.

By signing this plea agreement, the defendant agrees to waive any

objections, motions, and defenses she might have to the government's

decision.  In particular, she agrees not to raise any objections

based on the passage of time with respect to such counts including,

but not limited to, any statutes of limitation or any objections

based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

Amendment.

**C.  Waiver of Attorneys' Fees and Costs:**  The defendant agrees

to waive all rights under the "Hyde Amendment," Section 617, P.L.

105-119 (Nov. 26, 1997), to recover attorneys' fees or other

litigation expenses in connection with the investigation and

prosecution of all charges in the above-captioned matter and of any

related allegations including without limitation any charges to be

dismissed pursuant to this plea agreement and any charges previously

10

1  dismissed.

2                              VIII.

3                    **ENTIRE PLEA AGREEMENT**

4        Other than this plea agreement, no agreement, understanding,

5  promise, or condition between the government and the defendant

6  exists, nor will such agreement, understanding, promise, or condition

7  exist unless it is committed to writing and signed by the defendant,

8  counsel for the defendant, and counsel for the United States.

9

10                              IX.

11                   **APPROVALS AND SIGNATURES**

12       **A.   Defense Counsel:**  I have read this plea agreement and have

13  discussed it fully with my client.  The plea agreement accurately and

14  completely sets forth the entirety of the agreement.  I concur

15  in my client's decision to plead guilty as set forth in this plea

16  agreement.

17  DATED: March 30 , 2012

                                     _____
18                                     DANIEL V. NIXON
                                       Attorney for Defendant

19       **B.   Defendant:**  I have read this plea agreement and Information,

20  and have carefully reviewed every part of them with my attorney.  I

21  understand them, and I voluntarily agree to plead guilty.  I

22  understand the guideline calculations contained herein.  I understand

23  how each guideline variable was calculated, and I agree with the

24  calculation based upon a loss exceeding $7 million.  I also agree

25  that there were more than 10 victims, and that there may be 50 or

26  more victims.  I acknowledge that I met with representatives of the

27  United States, and was provided by the government with voluminous

28  pre-indictment discovery evincing my guilt before entering into this

                                  11

1  plea agreement.  Further, I have consulted with my attorney and fully
2  understand my rights with respect to the provisions of the Sentencing
3  Guidelines that may apply to my case.  No other promises or
4  inducements have been made to me, other than those contained in this
5  plea agreement.  In addition, no one has threatened or forced me in
6  any way to enter into this plea agreement.  Finally, I am satisfied
7  with the representation of my attorney in this case.

8
   DATED: March 30 , 2012
9                                          KINDE DURKEE, Defendant

10

11       C.  **Attorney for United States:**  I accept and agree to this plea
12  agreement on behalf of the government.

13

14  DATED: March 30 , 2012              BENJAMIN B. WAGNER
                                        United States Attorney
15

16

17                                  By: JOHN K. VINCENT
                                        Assistant U.S. Attorney
18

19

20

21

22

23

24

25

26

27

28

                                    12

EXHIBIT "A"

Factual Basis for Plea

I. <u>Introduction</u>

1.   At all relevant times, the State of California Fair Political Practices Commission (FPPC) regulated campaign financing and spending in state political races, developed forms which certain candidates and officeholders in the State of California were required to file, prepared manuals and instructions, and investigated alleged violations of the Political Reform Act.

2.   At all relevant times, the Federal Election Commission (FEC) was an independent regulatory agency.  Its duties included to disclose publicly finance information for federal officeholders and candidates, and to enforce the provisions of the law such as the limits and prohibitions on contributions.

3.   KINDE DURKEE first registered Durkee & Associates with the California Secretary of State on April 19, 2000.

4.   KINDE DURKEE registered Durkee & Associates as a domestic limited liability corporation (LLC) with the California Secretary of State on September 22, 2003.  KINDE DURKEE was listed in that filing as a "Member/Manager/Partner" of Durkee & Associates.

5.   At all relevant times, Durkee & Associates and KINDE DURKEE specialized in providing accounting and campaign reporting services to political committees for state or federal offices, including political candidate campaign committees and non-profit organizations. These services included:

        - maintaining financial records of, and for, the committees or organizations;

        - tracking the contributions to, and expenditures by, the committees or organizations;

        - filing necessary FPPC forms with the California Secretary of State in Sacramento, or the necessary forms with the (FEC), which reported, among other things, contributions, contributors, expenditures, and the overall financial condition of the candidate campaign committees or the organizations for whom a filing was required.

6.   At all relevant times, KINDE DURKEE frequently served as the committee treasurer for the client committees for which services were provided.  As such, she signed the campaign disclosure forms for state officials and organizations which were submitted to the California Secretary of State in Sacramento as required by state law. KINDE DURKEE prepared and submitted, and caused the preparation and submission of, campaign disclosure forms for federal officials to the FEC.  In the case of filings for the Feinstein for Senate campaign committee, they were sent by a commercial interstate carrier to the

13

Senate Office of Public Records.  There they were processed and imaged and then forwarded to the FEC.

7.   At all relevant times, KINDE DURKEE often acted as the custodian of records for the financial records of those clients who held federal office.  As such, she maintained records for all contributions to the campaign committee, as well as the committee's disbursements.

8.   At all relevant times, KINDE DURKEE and Durkee & Associates maintained bank accounts for their clients.  These accounts included ones into which campaign contributions were deposited and from which client expenditures were made.  KINDE DURKEE, either alone or with another employee of Durkee & Associates, was a signatory on the bank accounts.  Over the years, KINDE DURKEE has had signature authority on approximately 700 bank accounts, including those for political campaigns.

9.   At all relevant times, KINDE DURKEE was paid for the services rendered.  KINDE DURKEE was required to specify how much she was paid in filings made to the California Secretary of State and the FEC.

10.  At all relevant times, Durkee & Associates had employees that assisted in providing the accounting and campaign reporting services.

11.  At all relevant times, KINDE DURKEE operated Durkee & Associates and exercised control over the activities of its employees.

## II.  The Scheme to Defraud

12.  From in or about January 2000 to in or about September 2011, in the State and Eastern District of California and elsewhere, KINDE DURKEE did devise and intend to devise and participate in a material scheme and artifice to defraud clients of Durkee & Associates, and to obtain money from them by means of materially false and fraudulent pretenses, representations, and promises. Throughout the existence of the scheme, the defendant acted with the intent to defraud.

## III.  Manner and Means

To further the scheme and artifice to defraud, defendant KINDE DURKEE did the following over the years:

13.  KINDE DURKEE routinely misappropriated client funds by moving without authorization substantial sums of money out of client accounts, including political campaign accounts, into Durkee & Associates' or into other clients' accounts.

14.  KINDE DURKEE submitted and caused to be submitted false information to the California Secretary of State and the FEC in that she did not report these money transfers in and out of accounts on

14

the reports that she submitted or caused to be submitted to the California Secretary of State in Sacramento or the FEC on behalf of her clients.  As a result, many of her clients believed that their campaign accounts had more money in them than they actually held. The misrepresentations made and facts omitted on these reports were material.  The defendant understood that part of the scheme included submitting false information to the California Secretary of State and the Federal Election Commission.

15.   KINDE DURKEE used the money transferred from client accounts:

     - to pay her personal expenses, including mortgage payments and American Express charges:

     - to pay business expenses, including payroll; and

     - to repay unauthorized withdrawals from other client accounts.

A.   Jerome Horton

16.   At all relevant times, KINDE DURKEE was the treasurer of the campaign committee for California State Board of Equalization Member Jerome Horton.

17.   Between December 2006 and April 2008, KINDE DURKEE paid without authorization over $200,000 from the Horton campaign's bank account to Durkee & Associates.  Almost none of these payments were accurately reported on the Horton campaign disclosure forms that KINDE DURKEE filed or caused to be filed with the California Secretary of State.

18.   Between approximately September 2007 and March 2010, KINDE DURKEE repaid approximately $90,000 to the Horton campaign bank account.  None of these repayments were accurately reported on the Horton campaign disclosure forms that KINDE DURKEE filed or caused to be filed with the California Secretary of State.

19.   In approximately June 2010, when KINDE DURKEE was aware that she was under investigation by the FPPC in connection with the Horton campaign filings, she repaid at least some of the money that she had misappropriated from the Horton account by misappropriating money from three different federal campaign accounts: approximately $25,000 from Feinstein for Senate; $30,000 from the Committee to Re-elect Loretta Sanchez; and $15,000 from the Committee to Re-elect Linda Sanchez.

20. None of the foregoing transfers from federal campaigns was reported by KINDE DURKEE in the federal disclosure forms that she filed or caused to be filed with the FEC on behalf of those clients. In addition, KINDE DURKEE did not accurately report the repayment of money in Jerome Horton's disclosure form that she filed or caused to be filed with the California Secretary of State.

B.   Feinstein for Senate

21.   At all relevant times, Dianne Feinstein was a United States Senator for the State of California.

22.   At all relevant times, KINDE DURKEE was the custodian of records for the financial records of Senator Dianne Feinstein's campaign committee.  As such, she maintained records for all contributions to the campaign committee, as well as the committee's disbursements.

23.   At all relevant times, KINDE DURKEE and Durkee & Associates maintained bank accounts for Senator Dianne Feinstein's campaign committee.   These accounts included ones into which campaign contributions were deposited and from which client expenditures were made.

24.   At all relevant times, KINDE DURKEE filed or caused the filing of the necessary disclosure forms for Senator Dianne Feinstein's campaign committee with the FEC.

1.   The Misappropriation of $18,000

25.   On approximately March 2, 2010, KINDE DURKEE caused, without authorization, the deposit of three checks, each for $6,000 on the account of Dianne Feinstein for Senate, to be deposited into a Durkee & Associates' bank account.

26.   The $18,000 deposit covered other personal and business expenses of KINDE DURKEE.   The deposit covered a mortgage payment of $2,596.39 for KINDE DURKEE's residence in Long Beach, CA; a payment of $3,168.11 to Sprint; and a $10,000 payment for "payroll," which covered payments to, among other things, Durkee & Associates employees and a 401k plan.

2.   The Misappropriation of $40,000

27.   On approximately May 6, 2010, KINDE DURKEE caused, without authorization, the deposit of two checks, each for $20,000 on the account of Dianne Feinstein for Senate, to be deposited into a Durkee & Associates' bank account.

28.   The deposit eventually covered a mortgage payment of $3,400 for KINDE DURKEE's condominium in Long Beach, CA; a payment of $6,633 to Anthem Blue Cross; a payment of $1,038 to Kaiser Permanente; a payment of $1,613 to a self-storage company; payments to two employees of Durkee & Associates; and a $12,000 payment for "payroll," which covered, among other things, payments for bank fees and payments to several employees of Durkee & Associates.

3.   The Misappropriation of $23,000

29.   On approximately July 7, 2010, KINDE DURKEE caused, without authorization, the deposit of two checks, one for $8,000 and the other for $15,000, each on the account of Dianne Feinstein for

16

1   Senate, to be deposited into a Durkee & Associates' bank account.

2       30.   The deposit eventually helped to pay a $30,000 bill to
American Express on approximately July 7, 2010.  The bill included
3   charges to a variety of entities, including the Los Angeles Dodgers;
Union 76; Amazon.com.; Turners Outdoorsman; Harbor Freight Tools;
4   Disneyland; and Trader Joe's.

5           4.   The Misappropriation of $75,000

6       31.   On approximately July 19, 2010, KINDE DURKEE caused,
without authorization, the deposit of three checks, each for $25,000
7   on the account of Dianne Feinstein for Senate, to be deposited into a
Durkee & Associates' bank account.
8
        32.   The deposit covered a mortgage payment of $5,500 for Durkee
9   & Associates' office building in Burbank, CA; a payment of $2,555.53
to a credit card company; and multiple payments to Durkee &
10  Associates' employees, as well as a payroll company.

11      33.   None of the foregoing transfers from the Dianne Feinstein
for Senate account to a Durkee & Associates bank account were
12  reported on federal disclosure forms for that campaign committee
which KINDE DURKEE filed or caused to be filed with the FEC.
13
        C.   Committee to Re-elect Loretta Sanchez
14
        34.   At all relevant times, Loretta Sanchez was a member of the
15  United States Congress representing the 47th Congressional District of
California.
16
        35.   At all relevant times, KINDE DURKEE acted as the treasurer
17  of the campaign committee entitled Committee to Re-elect Loretta
Sanchez.
18
        36.   On approximately March 5, 2010, KINDE DURKEE caused,
19  without authorization, the deposit of a check for $10,000 on the
account of the Committee to Re-elect Loretta Sanchez to be deposited
20  into a Durkee & Associates bank account.

21      37.   The deposit covered a payment of $7,476 to Anthem Blue
Cross.
22
        38.   The $10,000 transfer from the Committee to Re-elect Loretta
23  Sanchez to a Durkee & Associates bank account was not reported on
federal disclosure forms for that campaign committee which KINDE
24  DURKEE filed or caused to be filed with the FEC.

25      D.   Feinstein for Senate/Committee to Re-elect Loretta Sanchez

26      39.   On approximately April 20, 2010, KINDE DURKEE caused,
without authorization, the deposit of two checks, each for $15,000,
27  one on the account of Dianne Feinstein for Senate and the other on
the account of Committee to Re-elect Loretta Sanchez, to be deposited
28  into a Durkee & Associates' bank account.

                                17

40.   The two deposits covered a number of checks, including ones to Chase Card Services, one to cover the fees for KINDE DURKEE's mother at a senior residential facility, and ones payable to several employees of Durkee & Associates.   The deposits also covered approximately $750 in bank fees for non-sufficient funds checks.

41.   Neither the $15,000 transfer from the Feinstein for Senate campaign committee nor the $15,000 transfer from the Committee to Re-elect Loretta Sanchez to a Durkee & Associates' bank account was reported on federal disclosure forms for those campaign committees which KINDE DURKEE filed or caused to be filed with the FEC.

E.   National Popular Vote

1.   Misappropriation of $100,000

42.   At all relevant times, National Popular Vote (NPV) and National Popular Vote Institute (NPVI) were non-profit organizations whose specific purpose was to study, analyze, and educate the public regarding its proposal to implement a nationwide popular election of the President of the United States.

43.   At all relevant times, KINDE DURKEE was listed in official filings as the Chief Financial Officer of NPV and NPVI.

44.   At all relevant times, KINDE DURKEE maintained records concerning contributions to, and expenditures by, those entities. She also exercised control over funds of NPV and NPVI.

45.   On approximately April 27, 2010, KINDE DURKEE caused, without authorization, a check for $100,000 on the account of National Popular Vote to be deposited into a Durkee & Associates bank account.

46.   The deposit covered a number of checks, including ones to American Express, several employees of Durkee & Associates, Kaiser Foundation Health Plan, Chase, and nearly $600 in bank fees for non-sufficient funds checks.

2.   Misappropriation of $80,000

47.   On approximately March 17, 2011, KINDE DURKEE caused, without authorization, two checks on the account of National Popular Vote, one for $65,000 and the other for $15,000, to be deposited into a Durkee & Associates' bank account.

48.   The deposit covered the following items:

| Item | Amount | Payee |
|------|--------|-------|
| Check | $3,000 | Michael D. Antonovich |
| Check | $1,000 | Susan Davis for Congress |
| Check | $1,000 | Foster for Treasurer 2014 |

18

| Check | $1,000 | Stop LA Oil Tax No on Prop O |
| Check | $25,000 | California Legislative Black Caucus |
| Check | $1,500 | Equality Network |
| Check | $5,000 | California Educational Solutions |
| Check | $3,000 | Center for Civic Participation |
| Check | $3,000 | National Popular Vote |
| Check | $10,000 | Durkee & Associates |

49.    Neither KINDE DURKEE nor Durkee & Associates informed NPV or NPVI of these unauthorized withdrawals.

F.    Dianne Feinstein, Loretta Sanchez, and Linda Sanchez

50.    At all relevant times, Linda Sanchez was a member of the United States Congress representing the 39th Congressional District of California.

51.    At all relevant times, KINDE DURKEE acted as the treasurer of the campaign committee entitled Committee to Re-elect Linda Sanchez.

52.    On approximately June 10, 2010, KINDE DURKEE caused, without authorization, the deposit of three checks, each for $10,000, one on the account of Dianne Feinstein for Senate, another on the account of Committee to Re-elect Loretta Sanchez, and a third on the account of Committee to Re-elect Linda Sanchez, to be deposited into a Durkee & Associates' bank account.

53.    The deposit helped to cover a $25,000 payment to American Express, a loan payment of $2,855.72 on KINDE DURKEE's residence in Long Beach, a payment to Kaiser Foundation Health, and nearly $600 in bank fees for non-sufficient funds checks.

54.    Neither KINDE DURKEE nor Durkee & Associates reported the $10,000 transfer from the Feinstein for Senate campaign committee, the $10,000 transfer from the Committee to Re-elect Loretta Sanchez, or the $10,000 transfer from the Committee to Re-elect Linda Sanchez to a Durkee & Associates' bank account on any of the federal disclosure forms for those campaign committees which KINDE DURKEE filed or caused to be filed with the FEC.

G.    Lou Correa for State Senate 2010

55.    From 1998 to the present, Lou Correa has held elected office.

56.    From 2006 to the present, Lou Correa was a member of the California State Senate representing the 34th District.

19

57.   At all relevant times, KINDE DURKEE acted as the treasurer of the campaign committees for Lou Correa.

58.   On approximately September 29, 2010, KINDE DURKEE caused, without authorization, a cashier's check in the amount of $207,751.39, which was drawn on a certificate of deposit account in the name of Lou Correa for State Senate, to be deposited into a Durkee & Associates bank account.

59.   These funds were subsequently combined with other funds, including a $25,000 deposit from the account of Dianne Feinstein for Senate, to cover the following items:

| Item | Amount | Payee |
|------|--------|-------|
| Check | $2,000 | Richardson for Congress |
| Check | $2,000 | Richardson for Congress |
| Check | $5,000 | Warner for Congress |
| Check | $30,000 | Committee to Re-elect Linda Sanchez |
| Check | $15,000 | National Popular Vote Institute |
| Check | $72,000 | Susan Davis for Congress |
| Check | $7,000 | National Popular Vote |
| Check | $150,000 | Friends of Steve Pougnet |

60.   KINDE DURKEE filed and caused the filing of a disclosure form with the California Secretary of State for the Lou Correa for State Senate campaign committee which did not report as required the $207,751.39 transfer from that campaign committee to a Durkee & Associates' bank account.  KINDE DURKEE also filed and caused the filing of a disclosure form with the FEC for the Dianne Feinstein for Senate campaign committee which did not report as required the $25,000 transfer from that campaign committee to a Durkee & Associates' bank account.

61.   KINDE DURKEE filed or caused the filing of numerous false campaign disclosure forms (entitled California Form 460 - Recipient Committee Campaign Statement) for Lou Correa for State Senate 2010 with the California Secretary of State.   The Ending Cash Balance reported in the forms was vastly higher than what was actually in the campaign's bank account, as set forth below:

| Date of Filing | Reporting Period of Form 460 | Reported Ending Cash Balance | Amount of Money Actually in Campaign Account |
|----------------|------------------------------|------------------------------|----------------------------------------------|
| 8/2/10 | 5/23/10 - 6/30/10 | $913,676.22 | $311,536.76 |
| 10/6/10 | 7/1/10 - 9/30/10 | $770,675.43 | $131,774.95 |

| 1/31/11 | 10/17/10 - 12/31/10 | $778,042.52 | $24,802.43 |
| 7/27/11 | 1/1/11 - 6/30/11 | $796,090.11 | $357.71 |

H.    Solorio for Assembly 2010

     1.    The Misappropriation of $300,000

62.    From 2006 to the present, Jose Solorio was a member of the California State Assembly representing the 69th District.

63.    At all relevant times, KINDE DURKEE was the treasurer of the campaign committee for Solorio for Assembly 2010.

64.    On approximately October 1, 2010, KINDE DURKEE caused, without authorization, a cashier's check in the amount of $300,000, which was drawn from a money market account in the name of Solorio for Assembly 2010, to be deposited into a Durkee & Associates bank account.

65.    These funds were subsequently combined with other funds to cover the following items:

| Item | Amount | Payee |
| --- | --- | --- |
| Check | $125,000 | Committee to Re-elect Loretta Sanchez |
| Check | $32,000 | Merchant Account (Durkee & Associates) |
| Check | $21,000 | Durkee & Associates |
| Check | $25,000 | Durkee & Associates |
| Check | $15,000 | Merchant Account (Durkee & Associates) |

66.    A portion of the $32,000 check to the Merchant Account ultimately covered several checks to Durkee & Associate's employees.

67.    A portion of the $25,000 check to Durkee & Associates ultimately covered payments to American Express, one in the amount of $16,854.76 and another in the amount of $679.03.  The payments to American Express covered charges from a variety of entities, including: Union 76; Amazon.com (gift cards); Baskin Robbins; Ulta, Turners Outdoorsman; Deckert Surgical; Ariel's Grotto at Disneyland; TIVO, Inc.; Bixby Animal Clinic; and the Aquarium of the Pacific in Long Beach.

     2.    The Misappropriation of $377,181.24

68.    On approximately October 8, 2010, KINDE DURKEE caused, without authorization, a cashier's check in the amount of $377,181.24, which was drawn from a money market account in the name of Solorio for Assembly 2010, to be deposited into a Durkee &

Associates bank account.

69.   These funds were subsequently combined with other funds to cover the following items:

| Item | Amount | Payee |
|------|--------|-------|
| Check | $45,000 | Durkee & Associates |
| Check | $45,000 | Committee to Re-elect Loretta Sanchez |
| Check | $60,000 | Beth Krom for Congress |
| Check | $40,000 | Susan Davis for Congress |
| Check | $25,000 | Merchant Account (Durkee & Associates) |
| Check | $25,000 | Merchant Account (Durkee & Associates) |
| Check | $5,000 | Durkee & Associates |
| Check | $6,000 | Durkee & Associates |
| Check | $5,000 | CAL ACE - LA Efforts |
| Check | $20,000 | Durkee & Associates |
| Check | $10,000 | Durkee & Associates |

70.   The $45,000 check which was deposited into a Durkee & Associates bank account was ultimately used to cover fees for KINDE DURKEE's mother at a senior residential facility, and to pay at least three of Durkee & Associates' employees.

71.   The two $25,000 checks to the Merchant Account were ultimately used to cover payments for a number of things, including payments to the Democratic Foundation of Orange County - Voter Guide ($13,000) and National Popular Vote ($5,000).

72.   The $6,000 check which was deposited into a Durkee & Associates bank account helped to cover a portion of the mortgage payment of $5,500 for Durkee & Associates' office building in Burbank.

73.   The $20,000 check which was deposited into a Durkee & Associates bank account covered a negative balance in that account and was also used to cover a payment to American Express in the amount of $1,284.59.

74.   KINDE DURKEE filed and caused the filing of a disclosure form with the California Secretary of State for the Solorio for Assembly 2010 campaign committee which did not report as required the $300,000 transfer or the $377,181.24 transfer from the campaign committee to a Durkee & Associates' bank account.

75.   KINDE DURKEE filed or caused the filing of numerous false

22

campaign disclosure forms (entitled California Form 460 - Recipient
Committee Campaign Statement) for Solorio for Assembly 2010 with the
California Secretary of State.  The Ending Cash Balance reported in
the forms was vastly higher than what was actually in the campaign's
bank account, as set forth below:

| Date of Filing | Reporting Period of Form 460 | Reported Ending Cash Balance | Amount of Money Actually in Campaign Accounts |
|---|---|---|---|
| 10-11-10 | 7/1/10 - 9/30/10 | $729,135.56 | $33,175.81 |
| 10/21/10 | 10/1/10 - 10/16/10 | $747,712.73 | $64,228.23 (as of 10/18/10) |
| 2/2/11 | 10/17/10 - 12/31/10 | $744,886.80 | $62,407.60 |
| 8/4/11 | 1/1/11 - 6/30/11 | $688,186.54 | $7,076.38 |

IV. Summary

76.  There were more than 10 victims of this scheme, and there
may have been 50 or more victims.  The estimated loss to victims
exceeds $7 million, but is less than $20 million.

V. Mailings

80.  On or about the dates set forth below, in the State and
Eastern District of California and elsewhere, for the purpose of
executing and attempting to execute the aforementioned scheme and
artifice to defraud, defendant KINDE DURKEE did knowingly place and
cause to be placed in any post office or authorized depository for
mail matter for delivery by the United States Postal Service, deposit
and cause to be deposited any matter to be sent or delivered by any
private or commercial interstate carrier, and cause to be delivered
by United States mail or such carrier according to the directions
thereon, the mail matter specified below:

| Count | Date | Mail Matter | Delivered To |
|---|---|---|---|
| 1 | 7/19/10 | FEC Form 3 Report of Receipts and Disbursements for Dianne Feinstein for Senate | Senate Office of Public Records 232 Hart Senate Office Building Washington, DC 20510 |
| 2 | 10/6/10 | Form 460 for Lou Correa for State Senate for the period 7-1-10 to 9-30-10 | California Secretary of State Sacramento, CA |
| 3 | 1/31/11 | Form 460 for Lou Correa for State Senate for the period | California Secretary of State Sacramento, CA |

23

| | | 10-17-10 to 12-31-10 | |
|---|---|---|---|
| 4 | 10/21/10 | Form 460 for Solorio for Assembly 2010 for the period 10-1-10 to 10-16-10 | California Secretary of State Sacramento, CA |
| 5 | 2/2/11 | Form 460 for Solorio for Assembly 2010 for the period 10-17-10 to 12-31-10 | California Secretary of State Sacramento, CA |

81.  False reports such as these which were filed with the California Secretary of State and the Senate Office of Public Records were instrumental to the success of the scheme because they served to hide the defendant's activity and prevent its discovery by the victims.

All of the foregoing was in violation of Title 18, United States Code, Sections 2 and 1341.

1  BENJAMIN B. WAGNER
   United States Attorney
2  JOHN K. VINCENT
   PHILIP A. FERRARI
3  Assistant U.S. Attorneys
   501 I Street, Suite 10-100
4  Sacramento, California  95814
   Telephone: (916) 554-2700
5

# FILED

MAR 27 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

2:12 - CR - 123  KJM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | |
| v. | VIOLATIONS: 18 U.S.C. § 1341 - Mail Fraud (5 counts) |
| KINDE DURKEE, | |
| Defendant. | |

# I N F O R M A T I O N

COUNTS ONE THROUGH FIVE: [18 U.S.C. § 1341 - Mail Fraud]

The United States Attorney charges:

KINDE DURKEE,

defendant herein, as follows:

## I. Introduction

1.    The State of California Fair Political Practices Commission (FPPC) was formed by the Political Reform Act of 1974.  At all relevant times, the FPPC regulated campaign financing and spending in state political races, developed forms which certain candidates and officeholders in the State of California were required to file,

1

Exhibit "B"

1  prepared manuals and instructions, and investigated alleged
2  violations of the Political Reform Act.

3       2.   The Federal Election Commission (FEC) was formed by
4  Congress in 1975.  At all relevant times, the FEC was an independent
5  regulatory agency.  Its duties included to disclose publicly finance
6  information for federal officeholders and candidates, and to enforce
7  the provisions of the law such as the limits and prohibitions on
8  contributions.

9       3.   KINDE DURKEE registered Durkee & Associates as a DBA with
10  the California Secretary of State on April 19, 2000.

11       4.   KINDE DURKEE registered Durkee & Associates as a domestic
12  limited liability corporation (LLC) with the California Secretary of
13  State on September 22, 2003.  KINDE DURKEE was listed in that filing
14  as a "Member/Manager/Partner" of Durkee & Associates.

15       5.   At all relevant times, Durkee & Associates and KINDE DURKEE
16  specialized in providing accounting and campaign reporting services
17  to political committees for state or federal offices, including
18  political candidate campaign committees and non-profit organizations.
19  These services included:

20            - maintaining financial records of, and for, the committees
21  or organizations;

22            - keeping track of the contributions to, and expenditures
23  by, the committees or organizations; and

24            - filing necessary FPPC forms with the California Secretary
25  of State in Sacramento, or the necessary forms with the (FEC), which
26  reported, among other things, contributions, contributors,
27  expenditures, and the overall financial condition of the candidate
28  campaign committees or the organizations for whom a filing was

2

1    required.

2       6.   At all relevant times, KINDE DURKEE frequently served as

3    the committee treasurer for the committees for which services were

4    provided.  As such, she signed the campaign disclosure forms for

5    state officials and organizations which were submitted to the

6    California Secretary of State in Sacramento as required by state law.

7    KINDE DURKEE prepared and submitted, and caused the preparation and

8    submission of, campaign disclosure forms for federal officials to the

9    FEC.

10      7.   At all relevant times, KINDE DURKEE often acted as the

11   custodian of records for the financial records of those clients who

12   held federal office.  As such, she maintained records for all

13   contribution to the campaign committee, as well as the committee's

14   disbursements.

15      8.   At all relevant times, KINDE DURKEE and Durkee & Associates

16   maintained bank accounts for their clients.  These accounts included

17   ones into which campaign contributions were deposited and from which

18   client expenditures were made.  KINDE DURKEE, either alone or with

19   another employee of Durkee & Associates, was a signatory on the bank

20   accounts.  Over the years, KINDE DURKEE has had signature authority

21   on approximately 700 bank accounts, including those for political

22   campaigns.

23      9.   At all relevant times, KINDE DURKEE was paid for the

24   services rendered.  KINDE DURKEE was required to specify how much she

25   was paid in filings made to the California Secretary of State or the

26   FEC.

27      10.  At all relevant times, Durkee & Associates had employees

28   that assisted in providing the accounting and campaign reporting

                                    3

1    services.

2         11.   At all relevant times, KINDE DURKEE operated Durkee &
3    Associates and exercised control over the activities of its
4    employees.

5                   II.  The Scheme to Defraud

6         12.   From in or about January 2000 to in or about September
7    2011, in the State and Eastern District of California and elsewhere,
8    KINDE DURKEE did devise and intend to devise and participate in a
9    material scheme and artifice to defraud clients of Durkee &
10   Associates, and to obtain money from them by means of materially
11   false and fraudulent pretenses, representations, and promises.

12                   III. Manner and Means

13        To further the scheme and artifice to defraud, defendant KINDE
14   DURKEE did the following over the years:

15        13.   KINDE DURKEE routinely misappropriated client funds by
16   moving without authorization substantial sums of money out of client
17   accounts, including political campaign accounts, into Durkee &
18   Associates' or into other clients' accounts.

19        14.   KINDE DURKEE submitted and caused to be submitted false
20   information to the California Secretary of State and the FEC in that
21   she did not report these money transfers in and out of accounts on
22   the reports that she submitted or caused to be submitted to the
23   California Secretary of State in Sacramento or the FEC on behalf of
24   her clients.  As a result, many of her clients believed that their
25   campaign accounts had more money in there than they actually held.

26        15.   KINDE DURKEE used the money transferred from client
27   accounts:

28             - to pay her personal expenses, including mortgage payments

                              4

1 and American Express charges;

2       - to pay business expenses, including payroll; and

3       - to repay unauthorized withdrawals from other client

4 accounts.

5     A.   <u>Jerome Horton</u>

6     16. At all relevant times, KINDE DURKEE was the treasurer of

7 the campaign committee for California State Board of Equalization

8 Member Jerome Horton.

9     17. Between December 2006 and April 2008, KINDE DURKEE paid

10 without authorization over $200,000 from the Horton campaign's bank

11 account to Durkee & Associates. Almost none of these payments were

12 accurately reported on the Horton campaign disclosure forms that

13 KINDE DURKEE filed and caused to be filed with the California

14 Secretary of State.

15     18. Between approximately September 2007 and March 2010, KINDE

16 DURKEE repaid approximately $90,000 to the Horton campaign bank

17 account. None of these repayments were accurately reported on the

18 Horton campaign disclosure forms that KINDE DURKEE filed and caused

19 to be filed with the California Secretary of State.

20     19. In approximately June 2010, when KINDE DURKEE was aware

21 that she was under investigation by the FPPC in connection with the

22 Horton campaign filings, she repaid at least some of the money that

23 she had misappropriated from the Horton account by misappropriating

24 money from three different federal campaign accounts: approximately

25 $25,000 from Feinstein for Senate; $30,000 from the Committee to Re-

26 elect Loretta Sanchez; and $15,000 from the Committee to Re-elect

27 Linda Sanchez.

28     20. None of the foregoing transfers from federal campaigns was

1   reported by KINDE DURKEE in the federal disclosure forms that she
2   filed and caused to be filed with the FEC on behalf of those clients.
3   In addition, KINDE DURKEE did not accurately report the repayment of
4   money in Jerome Horton's disclosure form that she filed and caused to
5   be filed with the California Secretary of State.

6       B.   Feinstein for Senate

7       21.  At all relevant times, Dianne Feinstein was a United States
8   Senator for the State of California.

9       22.  At all relevant times, KINDE DURKEE was the custodian of
10  records for the financial records of Senator Dianne Feinstein's
11  campaign committee.  As such, she maintained records for all
12  contributions to the campaign committee, as well as the committee's
13  disbursements.

14      23.  At all relevant times, KINDE DURKEE and Durkee & Associates
15  maintained bank accounts for Senator Dianne Feinstein's campaign
16  committee.  These accounts included ones into which campaign
17  contributions were deposited and from which client expenditures were
18  made.

19      24.  At all relevant times, KINDE DURKEE filed and caused the
20  filing of the necessary disclosure forms for Senator Dianne
21  Feinstein's campaign committee with the FEC.

22          1.   The Misappropriation of $18,000

23      25.  On approximately March 2, 2010, KINDE DURKEE caused,
24  without authorization, the deposit of three checks, each for $6,000
25  on the account of Dianne Feinstein for Senate, to be deposited into a
26  Durkee & Associates' bank account.

27      26.  The $18,000 deposit covered other personal and business
28  expenses of KINDE DURKEE.  The deposit covered a mortgage payment of

6

$2,596.39 for KINDE DURKEE's residence in Long Beach, CA; a payment
of $3,168.11 to Sprint; and a $10,000 payment for "payroll," which
covered payments to, among other things, Durkee & Associates'
employees and a 401k plan.

### 2.   The Misappropriation of $40,000

27.   On approximately May 6, 2010, KINDE DURKEE caused, without
authorization, the deposit of two checks, each for $20,000 on the
account of Dianne Feinstein for Senate, to be deposited into a Durkee
& Associates' bank account.

28.   The deposit eventually covered a mortgage payment of $3,400
for KINDE DURKEE's condominium in Long Beach, CA; a payment of $6,633
to Anthem Blue Cross; a payment of $1,038 to Kaiser Permanente; a
payment of $1,613 to a self-storage company; payments to two
employees of Durkee & Associates; and a $12,000 payment for
"payroll," which covered, among other things, payments for bank fees
and payments to several employees of Durkee & Associates.

### 3.   The Misappropriation of $23,000

29.   On approximately July 7, 2010, KINDE DURKEE caused, without
authorization, the deposit of two checks, one for $8,000 and the
other for $15,000, each on the account of Dianne Feinstein for
Senate, to be deposited into a Durkee & Associates' bank account.

30.   The deposit eventually helped to pay a $30,000 bill to
American Express on approximately July 7, 2010.  The bill included
charges to a variety of entities, including the Los Angeles Dodgers;
Union 76; Amazon.com.; Turners Outdoorsman; Harbor Freight Tools;
Disneyland; and Trader Joe's.

### 4.   The Misappropriation of $75,000

31.   On approximately July 19, 2010, KINDE DURKEE caused,

7

1  without authorization, the deposit of three checks, each for $25,000
2  on the account of Dianne Feinstein for Senate, to be deposited into a
3  Durkee & Associates' bank account.

4      32.   The deposit covered a mortgage payment of $5,500 for Durkee
5  & Associates' office building in Burbank, CA; a payment of $2,555.53
6  to a credit card company; and multiple payments to Durkee &
7  Associates' employees, as well as a payroll company.

8      33.   None of the foregoing transfers from the Dianne Feinstein
9  for Senate account to a Durkee & Associates' bank account were
10 reported on federal disclosure forms for that campaign committee
11 which KINDE DURKEE filed and caused to be filed with the FEC.

12     C.   Committee to Re-elect Loretta Sanchez

13     34.   At all relevant times, Loretta Sanchez was a member of the
14 United States Congress representing the 47th Congressional District of
15 California.

16     35.   At all relevant times, KINDE DURKEE acted as the treasurer
17 of the campaign committee entitled Committee to Re-elect Loretta
18 Sanchez.

19     36.   On approximately March 5, 2010, KINDE DURKEE caused,
20 without authorization, the deposit of a check for $10,000 on the
21 account of the Committee to Re-elect Loretta Sanchez to be deposited
22 into a Durkee & Associates' bank account.

23     37.   The deposit covered a payment of $7,476 to Anthem Blue
24 Cross.

25     38.   The $10,000 transfer from the Committee to Re-elect Loretta
26 Sanchez to a Durkee & Associates' bank account was not reported on
27 federal disclosure forms for that campaign committee which KINDE
28 DURKEE filed and caused to be filed with the FEC.

8

D.    Feinstein for Senate/Committee to Re-elect Loretta Sanchez

39.    On approximately April 20, 2010, KINDE DURKEE caused, without authorization, the deposit of two checks, each for $15,000, one on the account of Dianne Feinstein for Senate and the other on the account of the Committee to Re-elect Loretta Sanchez, to be deposited into a Durkee & Associates' bank account.

40.    The two deposits covered a number of checks, including ones to Chase Card Services, one to cover the fees for KINDE DURKEE's mother at a senior residential facility, and ones payable to several employees of Durkee & Associates. The deposits also covered approximately $750 in bank fees for non-sufficient funds checks.

41.    Neither the $15,000 transfer from the Feinstein for Senate campaign committee nor the $15,000 transfer from the Committee to Re-elect Loretta Sanchez to a Durkee & Associates' bank account was reported on federal disclosure forms for those campaign committees which KINDE DURKEE filed and caused to be filed with the FEC.

E.    National Popular Vote

1.    Misappropriation of $100,000

42.    At all relevant times, National Popular Vote (NPV) and National Popular Vote Institute (NPVI) were non-profit organizations whose specific purpose was to study, analyze, and educate the public regarding its proposal to implement a nationwide popular election of the President of the United States.

43.    At all relevant times, KINDE DURKEE was listed in official filings as the Chief Financial Officer of NPV and NPVI.

44.    At all relevant times, KINDE DURKEE maintained records concerning contributions to, and expenditures by, those entities. She also exercised control over funds of NPV and NPVI.

9

45. On approximately April 27, 2010, KINDE DURKEE caused, without authorization, a check for $100,000 on the account of National Popular Vote to be deposited into a Durkee & Associates' bank account. .

46. The deposit covered a number of checks, including ones to American Express, several employees of Durkee & Associates, Kaiser Foundation Health Plan, Chase, and nearly $600 in bank fees for non-sufficient funds checks.

   2.   Misappropriation of $80,000

47. On approximately March 17, 2011, KINDE DURKEE caused, without authorization, two checks on the account of National Popular Vote, one for $65,000 and the other for $15,000, to be deposited into a Durkee & Associates' bank account.

48. The deposit covered the following items:

| Item  | Amount   | Payee                                |
|-------|----------|--------------------------------------|
| Check | $3,000   | Michael D. Antonovich                |
| Check | $1,000   | Susan Davis for Congress             |
| Check | $1,000   | Foster for Treasurer 2014            |
| Check | $1,000   | Stop LA Oil Tax No on Prop O         |
| Check | $25,000  | California Legislative Black Caucus  |
| Check | $1,500   | Equality Network                     |
| Check | $5,000   | California Educational Solutions     |
| Check | $3,000   | Center for Civic Participation       |
| Check | $3,000   | National Popular Vote                |
| Check | $10,000  | Durkee & Associates                  |

49. Neither KINDE DURKEE nor Durkee & Associates informed NPV or NPVI of these unauthorized withdrawals.

///

10

1    F.    Dianne Feinstein, Loretta Sanchez, and Linda Sanchez

2        50.  At all relevant times, Linda Sanchez was a member of the
3    United States Congress representing the 39th Congressional District of
4    California.

5        51.  At all relevant times, KINDE DURKEE acted as the treasurer
6    of the campaign committee entitled Committee to Re-elect Linda
7    Sanchez.

8        52.  On approximately June 10, 2010, KINDE DURKEE caused,
9    without authorization, the deposit of three checks, each for $10,000,
10   one on the account of Dianne Feinstein for Senate, another on the
11   account of the Committee to Re-elect Loretta Sanchez, and a third on
12   the account of the Committee to Re-elect Linda Sanchez, to be
13   deposited into a Durkee & Associates' bank account.

14       53.  The deposit helped to cover a $25,000 payment to American
15   Express, a loan payment of $2,855.72 on KINDE DURKEE's residence in
16   Long Beach, a payment to Kaiser Foundation Health, and nearly $600 in
17   bank fees for non-sufficient funds checks.

18       54.  Neither KINDE DURKEE nor Durkee & Associates reported the
19   $10,000 transfer from the Feinstein for Senate campaign committee,
20   the $10,000 transfer from the Committee to Re-elect Loretta Sanchez,
21   or the $10,000 transfer from the Committee to Re-elect Linda Sanchez
22   to a Durkee & Associates' bank account on any of the federal
23   disclosure forms for those campaign committees which KINDE DURKEE
24   filed and caused to be filed with the FEC.

25   G.    Lou Correa for State Senate 2010

26       55.  From 1998 to 2004, Lou Correa was a member of the
27   California State Assembly representing Central Orange County.

28       56.  From 2004 to 2006, Lou Correa was a member of the Orange

                                      11

County Board of Supervisors.

57.  From 2006 to the present, Lou Correa was a member of the California State Senate representing the 34th District.

58.  At all relevant times, KINDE DURKEE acted as the treasurer of the campaign committees for Lou Correa.

59.  On approximately September 29, 2010, KINDE DURKEE caused, without authorization, a cashier's check in the amount of $207,751.39, which was drawn on a certificate of deposit account in the name of Lou Correa for State Senate, to be deposited into a Durkee & Associates' bank account.

60.  These funds were subsequently combined with other funds, including a $25,000 deposit from the account of Dianne Feinstein for Senate, to cover the following items:

| Item | Amount | Payee |
|------|--------|-------|
| Check | $2,000 | Richardson for Congress |
| Check | $2,000 | Richardson for Congress |
| Check | $5,000 | Warner for Congress |
| Check | $30,000 | Committee to Re-elect Linda Sanchez |
| Check | $15,000 | National Popular Vote Institute |
| Check | $72,000 | Susan Davis for Congress |
| Check | $7,000 | National Popular Vote |
| Check | $150,000 | Friends of Steve Pougnet |

61.  KINDE DURKEE filed and caused the filing of numerous false campaign disclosure forms (entitled California Form 460s - Recipient Committee Campaign Statement) for Lou Correa for State Senate 2010 with the California Secretary of State.  The Ending Cash Balance reported in the forms was vastly higher than what was actually in the campaign account.

12

62.   KINDE DURKEE filed and caused the filing of a disclosure form with the California Secretary of State for the Lou Correa for State Senate campaign committee which did not report as required the $207,751.39 transfer from that campaign committee to a Durkee & Associates' bank account.   KINDE DURKEE also filed and caused the filing of a disclosure form with the FEC for the Dianne Feinstein for Senate campaign committee which did not report as required the $25,000 transfer from that campaign committee to a Durkee & Associates' bank account.

H.   Solorio for Assembly 2010

1.   The Misappropriation of $300,000

63.   From 2006 to the present, Jose Solorio was a member of the California State Assembly representing the 69th District.

64.   At all relevant times, KINDE DURKEE was the treasurer of the campaign committee for Solorio for Assembly 2010.

65.   On approximately October 1, 2010, KINDE DURKEE caused, without authorization, a cashier's check in the amount of $300,000, which was drawn from a money market account in the name of Solorio for Assembly 2010, to be deposited into a Durkee & Associates' bank account.

66.   These funds were subsequently combined with other funds to cover the following items:

| Item | Amount | Payee |
|------|--------|-------|
| Check | $125,000 | Committee to Re-elect Loretta Sanchez |
| Check | $32,000 | Merchant Account (Durkee & Associates) |
| Check | $21,000 | Durkee & Associates |
| Check | $25,000 | Durkee & Associates |
| Check | $15,000 | Merchant Account (Durkee & Associates) |

13

67. A portion of the $32,000 check to the Merchant Account ultimately covered several checks to Durkee & Associate's employees.

68. A portion of the $25,000 check to Durkee & Associates ultimately covered payments to American Express, one in the amount of $16,854.76 and another in the amount of $679.03. The payments to American Express covered charges from a variety of entities, including: Union 76; Amazon.com (gift cards); Baskin Robbins; Ulta; Turners Outdoorsman; Deckert Surgical; Ariel's Grotto at Disneyland; TIVO, Inc.; Bixby Animal Clinic; and the Aquarium of the Pacific in Long Beach.

2.   The Misappropriation of $377,181.24

69. On approximately October 8, 2010, KINDE DURKEE caused, without authorization, a cashier's check in the amount of $377,181.24, which was drawn from a money market account in the name of Solorio for Assembly 2010, to be deposited into a Durkee & Associates' bank account.

70. These funds were subsequently combined with other funds to cover the following items:

| Item | Amount | Payee |
|------|--------|-------|
| Check | $45,000 | Durkee & Associates |
| Check | $45,000 | Committee to Re-elect Loretta Sanchez |
| Check | $60,000 | Beth Krom for Congress |
| Check | $40,000 | Susan Davis for Congress |
| Check | $25,000 | Merchant Account (Durkee & Associates) |
| Check | $25,000 | Merchant Account (Durkee & Associates) |
| Check | $5,000 | Durkee & Associates |
| Check | $6,000 | Durkee & Associates |
| Check | $5,000 | CAL ACE - LA Efforts |

14

| Check | $20,000 | Durkee & Associates |
| Check | $10,000 | Durkee & Associates |

71.  The $45,000 check which was deposited into a Durkee & Associates' bank account was ultimately used to cover fees for KINDE DURKEE's mother at a senior residential facility, and to pay at least three of Durkee & Associate's employees.

72.  The two $25,000 checks to the Merchant Account were ultimately used to cover payments for a number of things, including payments to the Democratic Foundation of Orange County - Voter Guide ($13,000) and National Popular Vote ($5,000).

73.  The $6,000 check which was deposited into a Durkee & Associates' bank account helped to cover a portion of the mortgage payment of $5,500 for Durkee & Associates' office building in Burbank.

74.  The $20,000 check which was deposited into a Durkee & Associates' bank account covered a negative balance in that account and was also used to cover a payment to American Express in the amount of $1,284.59.

75.  KINDE DURKEE filed and caused the filing of numerous false campaign disclosure forms (entitled California Form 460s - Recipient Committee Campaign Statement) for the Solorio for Assembly 2010 campaign committee with the California Secretary of State.  The Ending Cash Balance reported in the forms was vastly higher than what was actually in the campaign's bank account.

76.  KINDE DURKEE filed and caused the filing of a disclosure form with the California Secretary of State for the Solorio for Assembly 2010 campaign committee which did not report as required the

15

$300,000 transfer or the $377,181.24 transfer from that campaign
committee to a Durkee & Associates' bank account.

### IV. Summary

77. There were at least 50 victims of this scheme. As a result
of the fraudulent scheme described herein, KINDE DURKEE caused a loss
exceeding $7 million dollars to her clients.

### V. Mailings

78. On or about the dates set forth below, in the State and
Eastern District of California and elsewhere, for the purpose of
executing and attempting to execute the aforementioned scheme and
artifice to defraud, defendant KINDE DURKEE did knowingly place and
cause to be placed in any post office or authorized depository for
mail matter for delivery by the United States Postal Service, deposit
and cause to be deposited any matter to be sent or delivered by any
private or commercial interstate carrier, and cause to be delivered
by United States mail or such carrier according to the directions
thereon, the mail matter specified below:

| Count | Date | Mail Matter | Delivered To |
|-------|------|-------------|--------------|
| 1 | 7/19/10 | FEC Form 3 Report of Receipts and Disbursements for Dianne Feinstein for Senate | Senate Office of Public Records 232 Hart Senate Office Building Washington, DC 20510 |
| 2 | 10/6/10 | Form 460 for Lou Correa for State Senate for the period 7-1-10 to 9-30-10 | California Secretary of State Sacramento, CA |
| 3 | 1/31/11 | Form 460 for Lou Correa for State Senate for the period 10-17-10 to 12-31-10 | California Secretary of State Sacramento, CA |
| 4 | 10/21/10 | Form 460 for Solorio for Assembly 2010 for the period 10-1-10 to | California Secretary of State Sacramento, CA |

|   |        |                   |                        |
|---|--------|-------------------|------------------------|
|   |        | 10-16-10          |                        |
| 5 | 2/2/11 | Form 460 for Solorio for Assembly 2010 for the period 10-17-10 to 12-31-10 | California Secretary of State Sacramento, CA |

All in violation of Title 18, United States Code, Sections 2 and
1341.

                          BENJAMIN B. WAGNER
                          United States Attorney

Date: March 27, 2012

                          By: JOHN K. VINCENT
                          Assistant U.S. Attorney

17

## PENALTY SLIP

DEFENDANT:     KINDE DURKEE               2:12 - CR - 123   KJM

COUNTS ONE THROUGH FIVE:
VIOLATION          18 U.S.C. § 1341 - Mail Fraud

PENALTY:          Not more than 20 years imprisonment,
                  Not more than $250,000 fine, or both.
                  3-years term supervised release.

ASSESSMENT:     Mandatory $100 Special Assessment each count.

**Wenger, Mary (USACAE)**

| | |
|---|---|
| **From:** | caed_cmecf_helpdesk@caed.uscourts.gov |
| **Sent:** | Wednesday, March 28, 2012 10:41 AM |
| **To:** | CourtMail@caed.uscourts.gov |
| **Subject:** | Activity in Case 2:12-cr-00123-KJM USA v. Durkee Information (Felony) |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### Eastern District of California - Live System

## Notice of Electronic Filing

The following transaction was entered on 3/28/2012 at 10:40 AM PDT and filed on 3/27/2012
**Case Name:**     USA v. Durkee
**Case Number:**     2:12-cr-00123-KJM
**Filer:**
**Document Number:** 14

**Docket Text:**
**INFORMATION (Felony) as to Kinde Durkee (1) count(s) 1-5. (Shaddox-Waldrop, A)**

**2:12-cr-00123-KJM-1 Notice has been electronically mailed to:**

John Kevin Vincent     john.vincent@usdoj.gov, mary.wenger@usdoj.gov, usacae.ecfsaccrm@usdoj.gov

Philip A. Ferrari     philip.ferrari@usdoj.gov, usacae.ecfsaccrm@usdoj.gov

**2:12-cr-00123-KJM-1 Electronically filed documents must be served conventionally by the filer to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1064943537 [Date=3/28/2012] [FileNumber=5342351-0
] [2bfcbb44813a8e60b5b9e171ca66a9707daae20045affc497aa4c0c11be54b1d6d6
6ba4e2d59ea4b1ade0aaa23ae42ac713aeaa45e8bb62597ac2e2e9d765654]]

1